Jerry and Kelly **REYNOLDS,**
Appellants,

v.

**Carmen Carl GUIDO, Builder & Designer, Inc., Post–Tension Engineering, Inc., and State Farm Mutual Automobile Insurance Company, Appellees.**

No. 05–03–01681–CV.

Court of Appeals of Texas,
Dallas.

June 3, 2005.

Rehearing Overruled July 19, 2005.

James D. Blume, Shelly L. Skeen, Jennifer S. Stoddard, Joshua H. Northam, Kevin Wayne Vance, Blume & Stoddard, Dallas, for Appellant.

R. Lynn Fielder, Fisk & Fielder, P.C., Dallas, Maria Uldene Moffatt, Richard E. Schellhammer, Robert H. Dawson, Goins Underkofler Crawford & Langdon, Stephen B. Smith, Smith & Knott, James Bradley Frahm, Law Offices of Armando De Diego, P.C., Dallas, for Appellee.

Before Justices FITZGERALD, RICHTER, and LANG–MIERS.

## OPINION

Opinion by Justice FITZGERALD.

Jerry and Kelly Reynolds appeal a final judgment that includes a series of take-nothing summary judgments in favor of appellees Carmen Carl Guido, Builder & Designer, Inc. ("Guido"), Post–Tension Engineering, Inc. ("Post–Tension"), and State Farm Mutual Automobile Insurance Company ("State Farm Mutual"). For the reasons that follow, we affirm the trial court's judgment.

### BACKGROUND[1]

Appellants purchased and moved into a previously owned home in Garland, Texas in May 1996. They purchased the home from State Farm Mutual, although they mistakenly believed for some time that the seller was a different entity, State Farm Fire & Casualty Company. Appellants received no disclosure from the previous owner or from any other party regarding damage to the home's foundation.

Appellant Kelly Reynolds testified in her deposition that she first noticed evidence of damage to her home the first week she moved in, although she did not know what she was seeing. She stated that "[i]t took another, at least two or three months, to realize it was structural damage." Mrs. Reynolds testified that during the first six months of living in the home she and her husband saw tiles crack along a line in the

---

1. Because this appeal involves a number of summary judgments, our recitation of the facts includes undisputed facts and the appellants' version of any disputed facts.

kitchen, cracks zigzag the length of the wall over the staircase, and the sheetrock crack in several places. Within the first year and one half or two years of living in the house, carpet was replaced because of water damage and Mrs. Reynolds saw a two-finger-wide crack in the slab all the way across the living room floor. Likewise within that two-year period, an upstairs balcony separated from the brick of the house. Mrs. Reynolds testified appellants performed cosmetic repairs during this time, but she knew those repairs "were not fixing the structural damage."

In a letter dated February 26, 1997, Jerry Reynolds described "some fairly severe problems with my home" to its builder, Guido. The letter stressed Mr. Reynolds did not hold Guido responsible for the problems; instead, Mr. Reynolds stated that he or his attorney planned to "go straight to the Contractor's [sic] involved and deal with this." The first problem identified in the letter was:

> the kitchen floor is completely ruined with cracks, some as wide as 1/8″. It appears it began to crack in the grout and has since spread across the entire kitchen floor from one side to the other and as you might imagine, is extremely unsightly.

The letter next addressed problems with the roof, which involved "a major leak" involving the master bath that had been traced to "a problem around the fireplace." Other issues involved drains pulling off the upper balcony, rain "pouring water down inside [Mr. Reynolds's] living room," and wood "swelled away from the wall." Mr. Reynolds and Guido subsequently spoke by telephone and Guido inspected the home personally.

By letter dated April 3, 1997, Guido responded to Mr. Reynolds's concerns. In that letter Guido opined that "the problems are not severe and can all be reasonably resolved by any parties." The letter identified more than a half dozen contractors Guido recommended for repair work and/or who performed the original work on the home. One entity identified in the letter was Post–Tension, a representative of which was going to contact Mr. Reynolds to discuss foundation maintenance and repairs. Indeed, a significant portion of the letter dealt with perceived concerns with the foundation, and Guido encouraged investigation of a number of construction and drainage issues. Guido specifically opined that the kitchen tile problem was evidence of:

> differential foundation movement caused by improper foundation maintenance provided by the original owner and subsequent owners (unless documented otherwise) and or improper drainage installed by others.

Guido encouraged Mr. Reynolds to seek out any inspections performed at the time of his purchase of the home to determine whether they documented any concerns with structural or drainage issues.[2]

Sometime during or before July 1997, appellants engaged engineering expert John A. Morris to begin an investigation into the condition of appellants' home. Morris wrote a report that stated:

> The investigation began in July, 1997, with a visual examination, a level survey, plumbing tests, and a review of the original construction documentation. Over the next several months [Morris] met with the original slab designers, and with a hydraulic engineer to propose a repair method. We performed various tests on the slab and recommended a repair method in February, 1998.

**2.** No such inspections or reports are included in the summary judgment record.

Morris's report stated that in July 1997, when Morris first visually examined the house, he identified a number of "symptoms" causing him to conclude that "post construction foundation movement was responsible for the damage." Those "symptoms" included the slab's being two inches out of level, a "serious crack" that ran through the kitchen and breakfast room, sticking doors, "distress" in the sheet rock and brick veneer, and water damage from leaking rain water in the living room. Morris's report was not reduced to writing until much later.

Mrs. Reynolds testified that while water-damaged carpets were being replaced, she witnessed the above-described crack in the living room slab. Sometime after this discovery, she testified, appellants made a claim with their insurance company, State Farm Lloyds. Beginning on or about January 15, 1999, an inspector retained by State Farm Lloyds conducted tests on sewer and water lines, and on March 15, 1999, the Perdue & Associates report stated the house's problem is its foundation, not its plumbing. State Farm Lloyds denied appellants' claim.

On November 15, 1999, appellants' expert Morris issued his report, blaming an inappropriate slab foundation for the home's structural problems. The report identified Post–Tension as the designer of the inappropriate foundation. On December 21, 2000, appellants filed this lawsuit, naming Guido, Post–Tension, and State Farm Fire & Casualty Company as defendants.[3] State Farm Mutual was added as a party defendant in April 2002. Ultimately, all four of these parties filed summary judgment motions that were granted by the trial court. Appellants challenge the judgments in favor of Guido, Post–Tension, and State Farm Mutual.

## SUMMARY JUDGMENT STANDARDS

■ In a traditional motion, the party moving for summary judgment has the burden of showing there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). A defendant-movant must either (1) disprove at least one element of the plaintiff's theory of recovery, or (2) plead and conclusively establish each essential element of an affirmative defense. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex.1979); *Zep Mfg. Co. v. Harthcock*, 824 S.W.2d 654, 657 (Tex.App.-Dallas 1992, no writ). When a defendant moves for summary judgment on limitations grounds, it must conclusively prove all the elements of that defense. *See KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999). In this case, the plaintiffs pleaded the discovery rule to avoid the bar of limitations. Thus, for summary judgment purposes, the defendants were also required to negate the discovery rule by proving as a matter of law when the plaintiffs discovered or should have discovered their injury. *See Gibson v. Ellis*, 126 S.W.3d 324, 331 (Tex.App.-Dallas 2004, no pet.).

By contrast, when a party moves for summary judgment under rule 166a(i), asserting that no evidence exists as to one or more elements of a claim on which the nonmovant would have the burden of proof at trial, the burden is on the nonmovant to present enough evidence to raise a genuine

---

**3.** The petition incorrectly alleged claims against the State Farm entity as seller and as insurer. Eventually, the entity was granted summary judgment in its favor on all claims appellants urged against it. That summary judgment has not been appealed. Over time, appellants redirected the claims against State Farm Mutual (as seller) and State Farm Lloyds (as insurer). State Farm Lloyds was later non-suited.

issue of material fact on each of the challenged elements. Tex.R. Civ. P. 166a(i); *Gen. Mills Rest., Inc. v. Tex. Wings, Inc.*, 12 S.W.3d 827, 832 (Tex.App.-Dallas 2000, no pet.). If the nonmovant fails to do so, the trial judge must grant the motion. *Id.*

### THE SUMMARY JUDGMENT MOTIONS

We review the parties' motions according to the standards set forth above.

#### *Guido's and Post–Tension's Motions*

Guido and Post–Tension each filed a summary judgment motion seeking judgment as a matter of law on limitations grounds. The trial court's final judgment states:

> Plaintiffs' claims for negligence as to Defendants [Guido and Post–Tension] were dismissed as to these Defendant[s] pursuant to motions for summary judgment filed by Defendants [Guido and Post–Tension]. The court found that the applicable statute of limitations was two years.

Appellants' first issue charges that the trial court erred in granting summary judgment for Guido and Post–Tension on appellants' negligence claims because the suit was brought "within two years of its accrual." Appellants argue that they could not have discovered what was wrong with their home or who was responsible for its defects until November 1999, when their expert issued his report. Guido and Post–Tension argue appellants had notice of their injury long before that time. Accordingly, as to these parties, the issue before this Court is the accrual date of appellants' claim for negligence.

■ There is no disagreement on appeal that the relevant statute of limitations for the negligence claims is two years. *See* Tex. Civ. Prac. & Rem.Code Ann. § 16.003 (Vernon 2002). Ordinarily, a cause of action accrues when the wrongful

act effects an injury, regardless of when the plaintiff learned of such injury. *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex.1990). The discovery rule, on which appellants rely, is a narrow exception to this rule: it operates to toll the running of the period of limitations until the time a plaintiff discovers, or through the exercise of diligence should have discovered, the nature of his injury. *Id.* Once a claimant discovers the injury—or in the exercise of reasonable diligence should have done so—limitations commences. *Childs v. Haussecker*, 974 S.W.2d 31, 40 (Tex.1998). Limitations is not tolled until the plaintiff discovers the identity of the wrongdoer. *Russell v. Ingersoll–Rand Co.*, 841 S.W.2d 343, 344 n. 3 (Tex.1992). Nor is it tolled until the plaintiff discovers all of the elements of a cause of action. *See Moreno*, 787 S.W.2d at 357 (quoting *Coody v. A.H. Robins Co.*, 696 S.W.2d 154, 156 (Tex.App.-San Antonio 1985, no writ)).

■ We review Guido's and Post–Tension's motions, therefore, to determine whether those defendants established as a matter of law that appellants sued them more than two years after appellants discovered, or with reasonable diligence should have discovered, foundation problems in their home. Mrs. Reynolds's testimony admits knowledge of structural problems with the house well before the end of November 1996. By that time, she had witnessed kitchen tiles breaking apart along a crack in the floor, cracks zigzagging the length of a wall over the staircase, and sheetrock cracking in a number of places. By February of 1997, Mr. Reynolds was characterizing the cracking, leaking and related problems as "fairly severe" and had engaged an attorney to address the problems with contractors. In April of that year, appellants received their builder's written opinion that the problems they were experiencing with the house were

due to movement of the foundation. In July, appellants engaged their own engineering expert. By February 1998, that expert had examined the home, performed tests, and recommended a repair method. Then, sometime before May of 1998, appellants learned of the two-finger-wide crack in the slab all the way across the living room floor and made a claim under their homeowners' insurance policy. The summary judgment evidence establishes that appellants certainly knew or should have known of their injury by this time, at the very latest. *See, e.g., Polk Terrace, Inc. v. Curtis,* 422 S.W.2d 603, 604–05 (Tex.Civ. App.-Dallas 1967, writ ref'd n.r.e.) (limitations began to run when homeowners discovered cracking in masonry and sheetrock that would put reasonable person on notice); *see also Winn v. Martin Homebuilders, Inc.,* 153 S.W.3d 553, 558 (Tex. App.-Amarillo 2004, pet. denied); *J.M. Krupar Const. Co., Inc. v. Rosenberg,* 95 S.W.3d 322, 330–31 (Tex.App.-Houston [1st Dist.] 2002, no pet.). Accordingly, appellants' negligence claims accrued well before December 21, 1998. The summary judgment evidence establishes that these claims are time-barred.

We decide appellants' first issue against them.

### State Farm Mutual's Motions

State Farm Mutual filed two summary judgment motions. The first was a no-evidence motion, which specifically addressed appellants' breach of contract claim.[4] The no-evidence motion alleged there was no evidence that State Farm Mutual made any representations to appellants. Accordingly, according to the no-evidence motion, there could be no breach of contract claim based on a purported representation that the property was without defects at the time of the sale. The second summary judgment motion filed by State Farm Mutual was a traditional motion that sought judgment on the contract claim based on the agreement's "as-is" provision and the four-year statute of limitations.

Appellants filed their "Plaintiffs' Combined Response to Defendant State Farm Mutual Automobile Insurance Company's Motion for Summary Judgment and No-Evidence Motion for Summary Judgment." In response to the traditional motion, appellants argued there were fact issues (a) regarding the enforceability of the "as is" provision, and (b) regarding the limitations defense, based on application of (i) the discovery rule, and (ii) the relation-back doctrine. In response to the no-evidence motion, appellants argued the motion was premature and that fact issues existed regarding both the breach of contract and negligence claims.

The trial court specifically granted both summary judgment motions filed by State Farm Mutual.[5] However, appellants' second issue in this Court charges only that the trial court erroneously granted summary judgment for State Farm Mutual "based on misidentification of Appellee and 'as is' contract language." It does not address the no-evidence motion in any

---

4. The no-evidence motion also addressed appellants' negligence claim against State Farm Mutual for negligently maintaining the foundation before the house was sold to appellants. Appellants have abandoned that claim on appeal, so we do not address that portion of the motion here.

5. The trial court's "Modified Final Judgment" contains two hand-written corrections by the trial court. Paragraph 5 of the judgment refers to State Farm Mutual. In that paragraph, the typed statement "The court granted this summary judgment based on statute of limitations." is crossed out, and replaced by the handwritten statement: "Both motions were granted."

fashion. "When the trial court's judgment rests upon more than one independent ground or defense, the aggrieved party must assign error to each ground, or the judgment will be affirmed on the ground to which no complaint is made." *Morris v. JTM Materials, Inc.*, 78 S.W.3d 28, 54 (Tex.App.-Fort Worth 2002, no pet.) (citing *Scott v. Galusha,* 890 S.W.2d 945, 948 (Tex. App.-Fort Worth 1994, writ denied)). The trial court specifically granted both of State Farm Mutual's summary judgment motions, but appellants assigned no error to the no-evidence motion. Thus, we need not address appellants' second issue. We affirm the trial court's judgment in favor of State Farm Mutual on the no-evidence ground. *See id.*

## CONCLUSION

We have resolved both of appellants' issues against them. Accordingly, we affirm the judgment of the trial court.